```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
KEYU LONG,                                            :
                                                      :
                                 Plaintiff,           :     17 Civ. 2613 (KPF)
                                                      :
                    v.                                :     OPINION AND ORDER
                                                      :
AMWAY CORP.,                                          :
                                                      :
                                 Defendant.           :
                                                      :
------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 30, 2018

KATHERINE POLK FAILLA, District Judge:

　　Beginning in 2011, Plaintiff Keyu Long distributed goods for Defendant Amway Corp. ("Amway") pursuant to a contract that, among other things, compensated her through commissions and bonuses; the contract was renewed in 2015. In 2017, Plaintiff brought this action seeking a declaratory judgment that an arbitration agreement (the "Arbitration Agreement") embedded in her contract with Amway was unconscionable and thus unenforceable. Assuming the Court agreed with this position, Plaintiff then advanced claims for damages, alleging that Amway had wrongfully deprived her (and other distributors) of an annual sales bonus for performance in 2016. Perhaps more significantly, Plaintiff alleged that Amway had deprived her of this bonus on account of her race, and that Amway had similarly withheld sales bonuses from 75 to 100 other distributors of Chinese extraction of whom she was aware.

Relying on the Arbitration Agreement, Amway moved to dismiss the Complaint or to stay the case and compel arbitration. For the reasons outlined below, the Court holds that the Arbitration Agreement is valid and thus grants the motion to compel arbitration.

## BACKGROUND[1]

**A. Factual History**

**1. Amway's Registration Process**

Amway is a Michigan corporation, which touts itself as "a leader in the direct selling industry, offering entrepreneurs an exceptional business opportunity." (VanderVen Decl. ¶ 3). That "exceptional business opportunity" consists of registering distributors, to which Amway refers as "Independent Business Owners" (or "IBOs"), to sell Amway's "nutrition, wellness, beauty, and home products" and "sponsor others to do the same." (*Id.*). Amway's sales platform compensates IBOs through "various commissions and bonuses ... under the IBO Compensation Plan." (*Id.*).

In 2011, shortly after arriving from China, Plaintiff registered as an IBO at the behest of a Chinese couple who had previously worked for Amway. (*See* Pl. Decl. ¶¶ 5, 8). She renewed her registration with Amway in 2015, and it is that renewal agreement that is relevant to Plaintiff's current claims. (*See*

---

[1] For ease of reference, the Court refers to the Complaint as "Compl." (Dkt. #1); Plaintiff's Memorandum of Law in Opposition to Amway's Motion to Dismiss or Compel Arbitration as "Pl. Opp." (Dkt. #27); Plaintiff's declaration opposing the motion as "Pl. Decl." (Dkt. #30); and the Declaration of Gary D. VanderVen as "VanderVen Decl." (Dkt. #21) and its exhibits as the Rules of Conduct or "Rules" (VanderVen Decl., Ex. A (Dkt. #21-1)), the Chinese Registration Agreement or "Chinese Reg. Agmt." (VanderVen Decl., Ex. D (Dkt. #21-4)), and the Registration Agreement or "Reg. Agmt." (VanderVen Decl., Ex. E (Dkt. #21-5)).

VanderVen Decl. ¶ 8 n.1). To register, Plaintiff was required by Amway to sign a Registration Agreement that incorporated a separate document containing the Rules of Conduct and Compensation Plan that were applicable to all IBOs. (*See id.* at ¶ 4).

The face of the Registration Agreement contains a section reading, "AGREEMENT TO MEDIATE AND ARBITRATE DISPUTES." (Reg. Agmt.). That provision states:

> Amway ... and its IBOs mutually agree to resolve all claims and disputes arising out of or relating to an Independent Business, the Amway Independent Business Owner Compensation Plan ("IBO Compensation Plan"), or the Rules of Conduct ... under the Dispute Resolution Procedures described in the Rules of Conduct, specifically Rule 11. The Rules of Conduct shall be part of this IBO Registration Agreement and are incorporated by reference. A copy of the Rules of Conduct is available to review at www.amway.com.

(*Id.*). In turn, Rule 11 of the Rules of Conduct (the "ADR Provision") subjects disputes between Amway and its IBOs to a three-tiered dispute-resolution process. (*See* VanderVen Decl. ¶ 9-13). These procedures, explained more fully below, are also outlined in the Registration Agreement itself, which further contains a clause delegating issues of arbitrability to an arbitrator: "The Arbitrator shall have exclusive authority to resolve any dispute relating to the enforceability of this Agreement, including, but not limited to, any claim that all or any part of this Agreement is void or voidable." (Reg. Agmt.).

The Registration Agreement speaks in relevant part to the first step in the dispute-resolution process, requiring an IBO to "agree to submit any

3

dispute [the IBO] may have with … Amway … that is not resolved informally … to conciliation[.] The conciliation requirement is reciprocal and binds Amway, IBOs[,] and Approved Providers." (Reg. Agmt.). The Rules of Conduct describe "conciliation" as a non-binding process "designed to resolve disputes efficiently in a non-confrontational setting." (Rules § 11.4; *see* VanderVen Decl. ¶ 10). Conciliation initiates upon the complaining party's "providing a Request for Conciliation form to the other affected Parties" as well as "the Amway Business Conduct and Rules Department." (Rules § 11.4). A mediator oversees the process; he or she is selected by the Board of the Independent Business Owner Association International ("IBOAI"), "an independent trade association comprised of Amway distributors that represents the interests of all Amway IBOs." (VanderVen Decl.¶ 10). An IBO may object to the IBOAI mediator, however, in which case Conciliation proceeds before a neutral mediator. (*Id.*).

The Rules of Conduct provide further that "[i]f any part of [a] dispute is not resolved by mediation … , any IBO who is a Party to the remaining dispute may request a Hearing Panel[.]" (Rules § 11.4.2).[2] The Hearing Panel consists of "a disinterested three-person … panel selected by the IBOAI Board Executive Committee.'" (VanderVen Decl. ¶¶ 11-12). At this stage, the complainant presents evidence, and at the conclusion of the proceeding, the Hearing Panel issues a written, non-binding recommended resolution. (*Id.* at ¶ 12).

---

[2] This requirement applies to all disputes "except [those] involving an Approved Provider, or any challenge to the impartiality of the Hearing Panel itself, [which] shall go directly to arbitration without a Hearing Panel." (Rules § 11.4.2).

4

After proceeding before a Hearing Panel, either party may disregard the proposed resolution and proceed to the final dispute resolution mechanism — binding arbitration. (VanderVen Decl. ¶¶ 12-13). Arbitration is thus the third and final step to dispute resolution under the Registration Agreement and Rules of Conduct. The Registration Agreement requires an IBO to

> agree that if any dispute cannot be resolved by good faith efforts in Conciliation … , [the IBO] will submit any remaining claim or dispute arising out of or relating to [the IBO], the IBO Compensation Plan, or the IBO Rules of Conduct (including any claim against … Amway Corp. … ) … to binding arbitration[.]

(Reg. Agmt.). Rule 11.5 of the Rules of Conduct, in turn, requires "[t]he Parties [to] submit any Disputes that were not resolved through the process described in Rule 11.4, through binding arbitration[.]" (Rules § 11.5).

### 2. Plaintiff's Registration History

The parties agree that Plaintiff first registered as an IBO in 2011 and registered again in 2015. (*See* Pl. Opp. 5-6; VanderVen Decl. ¶ 8 n.1).[3] But they vehemently dispute the specifics of the process by which Plaintiff re-registered as an IBO.

Amway contends that Plaintiff's 2015 Registration Agreement — including the provision requiring IBOs to resolve any disputes pursuant to Rule 11's ADR Provision — was presented to her in Mandarin Chinese. (VanderVen Decl. ¶¶ 7-8). Indeed, Amway attached as an exhibit to its motion

---

[3] Amway adds that because Plaintiff's 2015 renewal was in September, after the start of the fiscal year, it would not expire until the end of 2016, and because Plaintiff was a "Silver Producer" during that period, her registration automatically renewed for 2017. (VanderVen Decl. ¶ 16).

5

a Registration Agreement in Chinese bearing Plaintiff's name, signature, and other identifying information.  (*See* Chinese Reg. Agmt.).  Amway has also provided the Declaration of a Chinese translator, which confirms that the Chinese version of the Registration Agreement includes the exact arbitration provision as the English version.  (*See generally* Huijie Decl.).

In contrast, Plaintiff contends that when she re-registered as an IBO in 2015, the agreement she signed was available only in English and Spanish, and that she "did not re-register in 2015 on an on-screen Chinese version of the Website because there wasn't one."  (Pl. Decl. ¶¶ 24-25 (emphases removed)).  Instead, Plaintiff claims that when she re-registered in 2015, she "merely … click[ed] on the 'Accept' button" on the online registration agreement, which was "in English, on the English version of the Registration." (*Id.* at ¶ 31 (emphasis removed)).[4]  Plaintiff states that while going through this process, she "never once considered whether [she] was entering into a contract."  (*Id.* at ¶ 55).

---

[4]     Plaintiff claims that she "do[es] not understand" "[h]ow Amway converted [her] Registration in English into the Chinese version presented to the Court," and suggests that this "should be the subject of inquiry by the Court."  (Pl. Decl. ¶ 36).  Below, the Court discusses the materiality *vel non* of the language in which Plaintiff's Registration Agreement appeared when she signed it.  But here, the Court pauses to mention another topic worthy of inquiry:  Plaintiff's Declaration is 77 paragraphs in length and styled quite similarly to the opposition memorandum submitted by her counsel — containing, for example, footnotes, bold typeface for emphasis, and rhetorical questions.  (*See, e.g.*, *id.* at ¶ 69 ("Realizing that your Chinese [IBOs] cannot understand English, why wouldn't Amway put the Registration on the Website in Chinese as well?")).  The peculiarity of this sworn statement being submitted by a party who even now contends that she is only "somewhat more facile in the English language" (*id.* at ¶ 54) is not lost on the Court, especially given that Plaintiff has not represented her declaration as being translated from Chinese.

### B. Plaintiff's Initiation of the Dispute-Resolution Process and the Instant Litigation

In October 2016, Plaintiff learned that she would not receive an annual bonus. (Compl. ¶ 27). She claims to have determined that "approximately 75 to 100" other IBOs did not receive the annual bonus, all of whom "are of Asian/Chinese extraction." (*Id.* at ¶ 29 (emphases removed)). Soon thereafter, on November 13, 2016, Plaintiff requested to engage in Conciliation with Amway to resolve the dispute, which was scheduled for a telephonic proceeding on March 17, 2017. (VanderVen Decl. ¶ 15). On March 6, 2017, however, Plaintiff withdrew her Conciliation request. (*Id.*).

Plaintiff filed the Complaint in this action on April 11, 2017. (Dkt. #1). It seeks several forms of relief. First, Plaintiff seeks declaratory relief holding unconscionable the Registration Agreement and Rules of Conduct that incorporate the ADR Provision, which relief would allow Plaintiff "to dispute the failure to pay [her a] [b]onus and pursue her claims ... in this Court." (Compl. ¶ 47). Second, the Complaint appears to plead two claims — breach of contract and unjust enrichment — under a single cause of action, alleging that by refusing to pay Plaintiff approximately $170,000 as an annual bonus, Amway both breached its contract with Plaintiff and was "unjustly enriched by retaining those Bonus monies." (*Id.* at ¶ 50). Third and finally, the Complaint includes a claim under 42 U.S.C. § 1981 for racial discrimination, based on Plaintiff's contention that Amway deprived "somewhere between 75 and 100 individuals all of the same ethnicity" of their bonuses. (*Id.* at ¶ 54).

7

On July 31, 2017, Amway filed the instant motion to dismiss the Complaint or compel arbitration based on the Registration Agreement and its incorporation of the ADR Provision. (Dkt. #18-22). On October 2, 2017, Plaintiff filed a memorandum of law opposing Amway's motion (Dkt. #27, 30), and on October 16, 2017, Amway replied to Plaintiff's opposition (Dkt. #31).

## DISCUSSION

### A. Motions to Compel Arbitration Under the Federal Arbitration Act

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), "reflects a liberal federal policy favoring arbitration agreements and places arbitration agreements on the same footing as other contracts." *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (internal quotation marks and citations omitted). Section 2 of the FAA provides, "[a] written provision in … a contract … to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA allows a party to such an agreement to petition a district court for an order compelling arbitration where a counterparty "fail[s], neglect[s], or refus[es] … to arbitrate" under the terms of an arbitration agreement. *Id.* § 4.

A court ruling on a petition to compel arbitration must thus decide two issues: "[i] whether a valid agreement or obligation to arbitrate exists, and [ii] whether one party to the agreement has failed, neglected, or refused to arbitrate." *Ngo* v. *Oppenheimer & Co.*, No. 17 Civ. 1727 (GHW), 2017 WL

5956772, at *2 (S.D.N.Y. Nov. 30, 2017) (quoting *Isaacs* v. *OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 566-67 (S.D.N.Y. 2013)). Where a court holds that an arbitration agreement is valid and the claims before it arbitrable, it must stay or dismiss the litigation and send the dispute to arbitration. *Id.* (quoting *Patterson* v. *Raymours Furniture Co.*, 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 40 (2d Cir. 2016) (summary order), *as corrected* (Sept. 7, 2016), *as corrected* (Sept. 14, 2016)).

A court resolving a motion to compel arbitration applies a standard similar to that for summary judgment. *Meyer*, 868 F.3d at 74 (quoting *Nicosia* v. *Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). In doing so, "the court considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." *Id.* (internal quotation marks, alterations, and citations omitted). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala.* v. *Randolph*, 531 U.S. 79, 91 (2000). A party opposing arbitration may not satisfy this burden through "general denials of the facts on which the right to arbitration depends"; instead, "[i]f the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co.* v. *Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

9

**B. Discussion**

    **1. The Arbitration Agreement Is Valid**

Before enforcing an arbitration agreement, a court must decide whether the agreement is valid under state contract law. *Meyer*, 868 F.3d at 73-74. "[A] court order compelling arbitration is warranted where the parties entered into a valid, enforceable agreement. Conversely, if there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Suqin Zhu* v. *Hakkasan NYC LLC*, No. 16 Civ. 5589 (KPF), 2017 WL 5713220, at *4 (S.D.N.Y. Nov. 28, 2017) (alterations and internal quotation marks omitted) (quoting *Bensadoun* v. *Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). Under New York law, "[a] valid arbitration agreement requires a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement." *Id.* (quoting *Matter of Express Indus. & Term. Corp.* v. *N.Y. State Dep't. of Transp.*, 93 N.Y.2d 584, 589 (1999)).

In its recent decision in *Meyers* v. *Uber Technologies, Inc.*, 868 F.3d 66 (2d Cir. 2017), the Second Circuit provided a framework for analyzing the validity of an arbitration agreement as part of a contract presented through a website. The Court explained that even if an offeree lacks actual notice of the terms of an arbitration agreement when entering a contract, "the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms," which "turns on the clarity and conspicuousness of arbitration terms." *Meyer*, 868 F.3d at 74-75 (internal alterations, quotation marks, and citations omitted); *see also Lovisa Const. Co.* v. *Suffolk Cty.*, 485

N.Y.S.2d 309, 310 (2d Dep't. 1985) ("Although no particular wording is required to constitute a valid, binding arbitration agreement, nor even the inclusion of the words 'arbitrate' or 'arbitrator,' the language used must be clear and unambiguous." (internal citations and quotation marks omitted)). And "in the context of web-based contracts, … clarity and conspicuousness are a function of the design and content of the relevant interface." *Meyer*, 868 F.3d at 75 (citing *Nicosia*, 834 F.3d at 233). The *Meyers* Court thus held that although the online contract before it presented the Terms of Service containing an arbitration provision only as a hyperlink on a screen requiring payment before a consumer could create an account with the defendant web company, those terms were nonetheless valid and enforceable as part of the contract, because "notice of the Terms of Service [was] provided simultaneously to enrollment, thereby connecting the contractual terms of the services to which they apply." *Id.* at 77.

So too here. To begin, the Registration Agreement itself contains a clause delegating challenges to the arbitrability of disputes under the agreement — such as those raised here — to an arbitrator. Plaintiff makes the unsupported assertion that "[t]he preliminary question of whether a party even assented to an arbitration agreement … is a matter for the Court to decide notwithstanding any delegation clauses to the contrary." (Pl. Opp. 8). But a delegation clause such as the one at issue is enforceable under New York law. *See Monarch Consulting, Inc.* v. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 26 N.Y.3d 659, 675 (2016) ("'[D]elegation clauses' are enforceable where 'there is

11

clear and unmistakable evidence that the parties intended to arbitrate arbitrability issues.'" (alterations in original omitted) (quoting *First Options of Chi., Inc.* v. *Kaplan*, 514 U.S. 938, 944 (1995)).  Moreover, Plaintiff raises no challenge to the delegation clause itself, but rather challenges as unconscionable the Arbitration Agreement (as contained in the Registration Agreement and Rules of Conduct) as a whole.[5]  Yet "where," as here, "a contract contains a valid delegation to the arbitrator of the power to determine arbitrability, such a clause will be enforced *absent a specific challenge to the delegation clause by the party resisting arbitration*."  *Monarch Consulting, Inc.*, 26 N.Y.3d at 675-76 (emphasis added) (citing *Rent-A-Center, W., Inc.* v. *Jackson*, 561 U.S. 63, 71-72 (2010) (holding that delegation clause in arbitration agreement was valid where plaintiff claimed arbitration agreement as a whole was unconscionable and did not specifically challenge delegation clause)).  Plaintiff's unconscionability claim thus does not foreclose sending her dispute to arbitration.

Plaintiff argues further that the Arbitration Agreement is invalid because "neither Plaintiff nor other similarly situated IBOs had actual or constructive knowledge" of the terms of the agreement.  (Pl. Opp. 15 (capitalization and emphasis removed)).  This position is both factually and legally flawed.  The

---

5   *See, e.g.*, Compl. ¶¶ 3 (alleging "agreement between Plaintiff and Defendant ... is void, or voidable in part, *as it mandates submitting disputes to an alternative dispute resolution ... process which is both procedurally and substantively unconscionable*), 31-45 (claiming arbitration process is unconscionable on grounds of unfairness and cost to Plaintiff), 47 ("Plaintiff is entitled to a Declaratory Judgment that the Amway Registration and Rules of Conduct, *and particularly the ADR procedures*, are both procedurally and substantively unconscionable[.]") (emphases added).

Registration Agreement, which Plaintiff concedes she signed, outlined the dispute-resolution procedures contained in the Rules of Conduct, and it directed putative IBOs to refer to those Rules. Thus, by providing an overview of the dispute-resolution process in addition to pointing to the more comprehensive framework in the Rules of Conduct, the Registration Agreement went further than simply "connect[ing] the contractual terms of the services to which they apply." *Meyer*, 868 F.3d at 77. Instead, the Registration Agreement *itself* delineated the dispute-resolution procedures to which claims between an IBO and Amway would be subject. A reasonably prudent user of Amway's registration process would thus have had actual notice that "any dispute [the user] may have with … Amway" would be subject to arbitration if not resolved through the nonbinding conciliation process. (Reg. Agmt.).

Nor does Plaintiff's professed unfamiliarity with the English language invalidate her agreement with Amway.[6] Plaintiff argues that "the average Chinese IBO would not have been put on notice and therefore **not have been informed** about the Rules of Conduct such that they would not have consented to those Rules." (Pl. Opp. 16-17 (emphasis in original)). But "[a] person who is illiterate in the English language is not automatically excused from complying with the terms of a contract simply because he or she could not read it. Such persons must make a reasonable effort to have the contract read to them." *Holcomb* v. *TWR Express, Inc.*, 782 N.Y.S.2d 840, 842 (2d Dep't 2004); *accord*

---

6    The Court assumes for this argument that Plaintiff's recitation of the facts of her 2015 re-registration as an Amway IBO is correct.

*Shklovskiy* v. *Khan*, 709 N.Y.S.2d 208, 209-10 (2d Dep't 2000); *Kenol* v. *Nelson*, 581 N.Y.S.2d 415, 417 (2d Dep't 1992). This proposition is underscored by Plaintiff's concession that she "never once considered whether [she] was entering into a contract"; she thus would have benefited by consulting someone fluent in English before signing the Registration Agreement. (*Id.* at ¶ 55). The question of whether Plaintiff was presented with a Registration Agreement in English or Chinese is therefore immaterial as to the validity of the Arbitration Agreement.

The Arbitration Agreement between the parties is thus valid and enforceable, and the Court proceeds to consider whether Plaintiffs' claims are arbitrable.

### 2. Plaintiff's Claims, Including the Antecedent Issue of Their Arbitrability, Are Subject to the Arbitration Agreement

Whether an arbitration clause encompasses a specific dispute is a matter for judicial determination "unless the parties clearly and unmistakably provide otherwise." *Alstom* v. *Gen. Elec. Co.*, 228 F. Supp. 3d 244, 248 (S.D.N.Y. 2017) (quoting *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). To determine the scope of the dispute, a court looks to "the factual allegations made in the plaintiff's complaint" rather than "the legal labels attached" to the claim. *Holick* v. *Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015) (citation omitted). After identifying the factual nature of the claims, a court determines whether the arbitration agreement is sufficiently broad so as to encompass them.

"Where the arbitration clause is broad," a court must "compel arbitration whenever a party has asserted a claim, however frivolous, that on its face is governed by the contract." *Peerless Imps., Inc.* v. *Wine, Liquor & Distillery Workers Union Local One*, 903 F.2d 924, 927 (2d Cir. 1990). In other words, if "the agreement is a broad one, ... the court must compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Mehler* v. *Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000) (quoting *Collins & Aikman Prods. Co.* v. *Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995)).

The factual core of Plaintiff's claims concerns an allegation that Amway wrongfully withheld bonuses to which Plaintiff and other IBOs were entitled under the IBO Compensation Plan. The scope of this dispute thus falls squarely within Plaintiff's contractual relationship with Amway. And the Registration Agreement provides that "if any dispute cannot be resolved by good faith efforts in Conciliation," an IBO must submit "to binding arbitration" "any remaining claim or dispute arising out of or relating to [the IBO's] Independent Business, the IBO Compensation Plan, or the IBO Rules of Conduct" that is "against another IBO, or any such IBO's officers, directors, agents, or employees; or against Amway Corp." (Reg. Agmt.). The Arbitration Agreement here is what the Second Circuit would call "a classically broad one," which covers Plaintiff's claims. *Mehler*, 205 F.3d at 49 (finding "classically broad" an arbitration agreement applicable to "'any controversy or claim between [the parties] arising out of or relating to' the Agreement."). Moreover,

15

as discussed above, given the delegation clause in the Registration Agreement, Plaintiff's unconscionability claim must also proceed before an arbitrator. In sum, the Arbitration Agreement here encompasses Plaintiff's claims, including the antecedent issue of their arbitrability, and Plaintiff can provide no argument to the contrary.

## CONCLUSION

Given the foregoing, Amway's motion to compel arbitration is GRANTED. The Clerk of Court is ORDERED to terminate the motion at docket entry 18 and to stay the case pending the outcome of any arbitration. *See Katz* v. *Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015).

SO ORDERED.

Dated:     January 30, 2018
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge